[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION
On May 3, 1994, this court prospectively denied the defendant, Laurence Gershman's motion for modification of alimony and prospectively reinstated the defendant's obligation to pay alimony to the plaintiff in accordance with the terms of the dissolution of marriage decree as of the date of the court's ruling.
The provision of the Connecticut General Statutes which governed the court's consideration of this matter is section46b-86 which reads in pertinent part:
 Modification of alimony or support orders and judgments (a) Unless and to the extent that the decree precludes modification, any final order for periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in circumstances of either party . . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law.
In determining whether there had been a substantial change in circumstances of the defendant sufficient to warrant a modification of alimony ordered to be paid by the defendant to the plaintiff in the dissolution of marriage decree, the court, among other factors, collectively considered the following four factors in fashioning its ruling: (a) the earning capacity of the CT Page 2224 defendant; (b) the degree to which the defendant's continued state of unemployment was voluntary; (c) the lifestyle maintained by the defendant; and (d) the terms of the dissolution of marriage decree.
A. EARNING CAPACITY OF THE DEFENDANT, LAURENCE GERSHMAN
Based on the testimony of the defendant, the court made the following findings with regard to the defendant's earning capacity.
The defendant was not gainfully employed from January 1, 1993 up through and including the final date on which testimony was taken in this matter on January 6, 1994.
Prior to January 1992, the defendant was employed as president of a large advertising agency and communications company making a salary of $250,000 per year.
After that, the defendant was employed by Health Club Media Networks, a company in which he owned stock and held a significant position until January, 1993.
The court found the defendant to have a significant level of skill and experience in the area of the communications industry.
Based on the defendant's own testimony regarding the positions which he held in this industry prior to his period of unemployment, the court found that the defendant had attained a level of proficiency in his field to enable him to obtain positions at levels of high responsibility which generated commensurately significant levels of compensation.
Despite the fact that the defendant has not obtained employment in over a year's time, the court finds there has been no diminution of his mental or physical capacity which would prevent him from obtaining a position in the communications industry or some related field.
Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment.
B. THE DEGREE TO WHICH THE DEFENDANT'S CONTINUED STATE OF UNEMPLOYMENT WAS VOLUNTARY CT Page 2225
Based on the defendant's testimony, the court made the following findings with regard to the defendant's continued state of unemployment:
Between January, 1993 and January, 1994, the defendant went on approximately sixty (60) interviews, approximately half of which were call-back interviews. The defendant also attempted to work with head-hunters and had gone on interviews to which they had sent him.
Although the defendant had made some efforts to obtain employment, as opposed to no effort whatsoever, the court found that the defendant could have been more zealous in his attempts to obtain employment. There was a significant portion of time unaccounted for which this court believed the defendant could have and should have utilized more productively. When the defendant was questioned on this point, he did not give a response justifying his failure to utilize at least a portion of his time at some labor which would earn him at least some income.
This court found particularly troubling the fact that Mr. Gershman allowed an entire year to elapse without securing some type of employment which would produce an income with which he could meet his financial obligations or at least some portion thereof.
Even if a position at the level to which Mr. Gershman had become accustomed was genuinely not available to him, there comes a time after a period of unemployment that one's standards must be lowered. The court did not find it credible that Mr. Gershman could not obtain any position whatsoever from which to earn even a more modest income.
While examining the plaintiff on the stand, the defendant requested to see a copy of her resume. The court inquired whether the defendant believed he could get the plaintiff a job. Mr. Gershman said to this court: "Quite honestly, your Honor, yes. The answer is obviously, yes. There are plenty of jobs right in Brookfield, Connecticut within one mile of where Mrs. Gershman resides." When the defendant was then asked why he could not seem to obtain employment for himself, he responded, saying: "I can get a job if I want to earn $300 a week. I choose to try and build something for myself." These statements were made after Mr. Gershman had been unemployed for almost a six month period. CT Page 2226
The court found that after a year of earning no income, the defendant had an obligation to utilize his efforts and skills to find a job from which he would earn at least some income which would then help him meet at least a portion of his obligations as opposed to spending his time "trying to build something for himself" at the expense of his ex-wife.
The defendant testified that he utilized over $60,000 in savings in an effort to start a new business. The defendant did not negotiate a salary for himself in starting up this new company and made his new wife, Bonnie Geller Gershman, a partner in this business despite the fact that she made no capital contribution to its start-up costs as each of the other partners were required to do. Attempting to start a new business at that point in time was not financially responsible. The defendant claimed that his financial resources were practically depleted. He claimed that he was living off the charity of his family members, particularly his mother, yet he chose to invest a significant amount of money into a business that was not even designed at its inception to produce him with a stream of income to meet his obligations. Starting a new business involves by its nature a certain amount of risk. The court felt that it was not an appropriate risk for the defendant to be taking, given his claimed financial condition and the financial obligations he had.
The defendant's failure to obtain employment which would allow him to meet at least a portion of his financial obligations, despite his ability and his own belief, voiced to this court, in his capacity to do so, indicated to this court that the defendant's continued unemployment was at least in part voluntary.
In addition, the demeanor and apparent and exhibited attitude of the defendant while before this court, as well as his own testimony concerning his attempts to obtain employment that was realistically within his ability to obtain, has caused the court to conclude that the defendant has engaged in a pattern of conduct and continues to engage in a pattern of conduct that contemplates allowing the ten year period of alimony to run before he is going to make a genuine, concerted, reasonable, and realistic effort to obtain significant employment.
C. THE LIFESTYLE MAINTAINED BY THE DEFENDANT CT Page 2227
Based on the defendant's own testimony, the court made the following findings with regard to the lifestyle maintained by the defendant.
Despite the fact that the defendant had been unemployed for an entire year as of the last day that testimony was taken in this matter, the defendant continued to live in a rented house with his new wife and his two children issue of his marriage with the plaintiff. The rent which was due and which was in fact paid on this property was $2,400 per month.
At all times relevant to these proceedings, the defendant's new wife owned an apartment in New York City. The apartment remained vacant and no rental income was obtained from it during any time relevant to these proceedings.
The defendant's new wife was not gainfully employed since January, 1993 (although she did some nutritional counseling, the defendant claimed she was not properly paid for these services) and made no contribution toward the payment of rent on the house in which she was living with the defendant.
Despite being unemployed, the defendant took several vacations during 1993. He and his new wife accompanied several other couples to Jamaica. The defendant claimed that this trip cost him nothing, but the court did not find this credible. Further, the defendant, his new wife, and his children vacationed at his mother's home in Florida for a week, which the defendant testified was at his mother's expense. There was also testimony about a business trip to Mexico attended by the defendant and his new wife shortly after they were married. The defendant testified that these trips cost him nothing, however, the court finds this to be incredible. Even if these trips were somewhat subsidized by someone else or by a company, the incidental expenses of traveling are notable and are not something which an unemployed person, who has significant financial obligations he is not meeting, can afford to spend money on.
When the hearing on this matter commenced June 23, 1993, the defendant had been unemployed for six months. The defendant testified at that time that he still owned horses and one horse was being sold. Further testimony reflected that at some point in time between June, 1993 and January, 1994, his daughter's horse was sold for $12,000. However, the defendant also testified to paying Fairfield Equine offices the sum of $500 in May, 1993 and CT Page 2228 paying New England Equine $440 in July of 1993 for veterinary bills. Moreover, despite being unemployed since January, 1993, the defendant pays "some of the board sometimes" for a horse owned by Bonnie Geller Gershman, his new wife.
Based on the testimony of the defendant, the court concluded that despite being unemployed for a year, the extravagant lifestyle of the defendant continued with little diminution. Said lifestyle included taking numerous vacations, and paying for the boarding and veterinary bills of his daughter and new wife's horses. In addition, despite being unemployed, the defendant continued to pay rent on a home at the rate of $2,400 per month without contribution from his new wife, despite the fact that she had an apartment in New York City which, although vacant, was not being rented for income and was not occupied by them.
D. THE TERMS OF THE DISSOLUTION OF MARRIAGE DECREE
The court makes the following finding with respect to the provision of the dissolution of marriage decree regarding the payment of alimony.
The provision of the dissolution of marriage decree is self-modifying. There are periodic reductions in the amount of alimony due and payable built into the decree.
The court entered its ruling regarding the defendant's motion for modification and the plaintiff's request for reinstatement of alimony based on the foregoing findings made by this court derived from the evidence presented during the course of the hearing of this matter. The defendant had not been gainfully employed since January, 1993 and made some efforts to obtain employment. The court determined that it would be unfairly burdensome to the defendant to reinstate alimony retroactively to June 23, 1993, the date on which this hearing commenced, and therefore did not do so.
However, the court determined, based on all of the evidence, that it was appropriate for alimony to be reinstated prospectively from May 3, 1994 without modification for the following reasons.
First, in fashioning its ruling, the court was acutely cognizant that the provisions of the decree were self modifying. Within a matter of months, after alimony was ordered to be CT Page 2229 reinstated, the terms of the dissolution of marriage decree itself reduced the alimony obligation of the defendant by half, to $2,000.
Second, this court afforded the defendant a significant accommodation, taking into account all the circumstances, by forgiving his alimony obligation from June, 1993 until May of 1994, and reinstating alimony prospectively only. The defendant has not paid any alimony to the plaintiff since February of 1993.
Third, although the court was cognizant that the financial difficulties which the defendant is experiencing are not entirely due to his own fault, and the court acknowledged that factors such as the economy, and several unfortunate turns of events as to certain business dealings were beyond the defendant's control, there were factors that were within the defendant's control.
Fourth, in order for this court to order a prospective modification of the dissolution of marriage decree, it would have had to find that there was a substantial change in circumstance of the defendant not brought about through fault of his own.
A. Substantial Change in Circumstances
Having listened carefully to the evidence regarding the lifestyle the defendant continued to maintain despite being unemployed, it would seem that the defendant's own lifestyle had not changed substantially. He continued to live in the same home, despite its cost. He continued to travel for vacation purposes. He continued to expend monies on luxuries such as equestrian expenses. The evidence regarding the lack of change in the defendant's own lifestyle does not support a finding that his circumstances have undergone a substantial change. It appears to the court that the defendant has found the money for the things he wants to pay for, but paying alimony to his ex-wife is not one of those things.
B. Voluntary Nature of a Change in Circumstances — Fault
Based on the evidence presented, the court determined that the defendant's failure to obtain gainful employment for an entire year, despite the fact that he had marketable skills and the physical capacity to become employed, clearly supports the conclusion that his failure to obtain gainful employment was voluntary. CT Page 2230
The actual earnings of a party seeking modification is not the sole factor the court must consider when reviewing an application for modification. The court must look at whether the facts presented indicate whether a substantial change in circumstance has in fact occurred. The court must look in appropriate cases to the earning capacity of the parties. The court must also consider the extent to which a change in circumstances was brought about voluntarily. In rendering its decision, the court took into consideration all of these factors.
Taking into consideration all of the foregoing factors, the court reinstated alimony prospectively, finding that the defendant was perfectly capable of obtaining employment necessary to fulfill the obligation of the payment of alimony which would be required by the terms of the decree.
Riefberg, J.